PHINEAS C. DUMOND Appellant, *v.* ANN KIFF and others, Respondents.

(GENERAL TERM, THIRD DEPARTMENT, SEPTEMBER, 1872.)

A will and codicil were executed by a person eighty years of age ; neither of the subscribing witnesses, who were the same to each instrument, testified to his mental capacity; one of them thought him not of sound mind at the execution of either paper, the first being executed in April, and second in June following.    It also appeared that in the succeeding autumn the testator failed to know his children, and inquired how many he had, and could only name some of them.    *Held*, that the surrogate's decision, refusing probate of the instruments, should be affirmed.

THIS was an appeal from the decision of the surrogate of Delaware county, refusing probate to certain instruments propounded before him as the last will and testament and codicil thereto of James Dumond, deceased, and bearing date April 8, 1863, and June 23, 1863, respectively.

The testator died at the age of eighty-seven years, having executed the instruments mentioned in his eighty first year.

The probate was resisted upon the ground of mental incapacity and undue influence, fraud, &c.

The subscribing witnesses to each of the instruments were the same.    One of them could "not tell anything about the testator's mind" at the time of their execution, and testified that he had no recollection of signing his name as a witness,

Dumond *v.* Kiff.

though he identified his signature as his own, and upon cross-examination said that he could not recollect whether the testator was then of sound mind or not.

The other subscribing witness, whose memory retained the particulars of both executions, and who detailed them at length, testified as follows, viz.: "I could not say that he (testator) was of sound mind and memory at the time I witnessed the will; I don't think he was sound, and I say the same as to the second writing."

Other evidence was given by the contestants, which is mentioned in the opinion, and there was evidence also on the part of the proponents, tending to show that the testator had testamentary capacity at the date of the instruments offered.

*J. R. Allaben,* for the appellant.

*William Gleason,* for the respondent.

Present—MILLER, P. J., POTTER and PARKER, JJ.

MILLER, P. J. We think that the weight of the evidence in this case is strongly against the capacity of the testator to make a valid testamentary disposition of his estate. Neither of the subscribing witnesses to the will and codicil testify to the mental capacity of the testator at the time when these instruments were executed; and one of them expresses an opinion that the testator was not of sound mind on either occasion.

The proof also shows that the autumn after the will was executed the deceased did not know that one of his sons, who lived near him, was one of his children; and he denied that he knew him. It also appears that, in 1863, one of his sons, who had lived a few miles off, came to see him, and conversed with him some time. He inquired who it was, and on being asked if he did not know him, he replied that he said he was his boy, but he had no recollection of a son of that name. He frequently asked how many children he had, and could only name some of them.

In 1862 his daughter, who lived in Pennsylvania, who had previously visited him in 1859, came to see him, and it was a long time before he could be made to understand that she was his daughter, or that he had any such child.

There is other evidence, showing senile dementia and that the deceased was incompetent to make a will, which it is unnecessary to state, as from that already referred to it is apparent that the deceased had not sufficient mind to comprehend the nature and effect of the acts he was performing, the relation he held to the various persons who had claims on his bounty, and that he was incapable of making a rational selection among them. (25 N. Y., 205.)

Surely, under the circumstances presented, no other rational conclusion could be arrived at than that the deceased was without sufficient capacity to make a valid disposition of his property; and the surrogate was right in rejecting the instruments propounded for probate.

There was no such error in the rulings of the surrogate as to the admission and rejection of evidence as authorizes a reversal of his decision.

Proceedings affirmed, with costs of the several parties to be paid out of the estate.